United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 31, 2005**

Charles R. Fulbruge III
Clerk

REVISED JUNE 16, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 04-10218

———————————————

YOUN J. LEE,

Petitioner - Appellant,

versus

ALBERTO GONZALES; NURIA PRENDES,
Field Officer in Charge of Detention and Removal,
Bureau of Immigration and Customs Enforcement,

Respondents - Appellees.

———————————————————————————————————

Appeal from the United States District Court
for the Northern District of Texas

———————————————————————————————————

Before GARWOOD, JONES, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This case requires further explanation of immigration procedure in this circuit. We hold, consistent with our prior decisions, that habeas corpus relief is not available to an immigrant who has other procedural devices to secure court review of Board of Immigration Appeals ("BIA") decisions, even where the form of review is limited to this court's construing statutory provisions concerning our appellate jurisdiction. Lee, having had the opportunity to secure review through an appeal that would have

tested this court's jurisdiction, improperly pursued habeas relief instead. The dismissal of his petition must be affirmed.

Youn Jae Lee ("Lee") appeals the district court's dismissal of his petition for habeas corpus. Lee, a native and citizen of South Korea, entered the United States as a visitor on March 22, 1993. Lee became a legal United States resident on May 24, 1996. On April 10, 1998, Lee pled guilty to a single count of violating 18 U.S.C. § 2320, Trafficking in Counterfeit Goods or Services. The court ordered Lee to pay restitution in the amount of $5,479.92 and placed him on probation for sixty months. This conviction prompted the Immigration and Naturalization Service ("INS")[1] to institute removal proceedings against Lee under the Immigration and Nationality Act.

On September 26, 2001, the immigration judge sustained the charge of deportation based on the judge's characterization of Lee's crime as a "crime involving moral turpitude" ("CIMT") for which a sentence of one year or longer could be imposed. See 8 U.S.C. § 1227(a)(2)(A)(i). On January 29, 2003, the BIA affirmed this decision. Lee did not attempt to file a petition for review of the BIA's decision in this court.

On March 3, 2003, Lee filed instead this petition for writ of habeas corpus in the district court. A magistrate judge recommended that the district court dismiss Lee's petition for lack

---

[1] This entity is now known as the Bureau of Immigration and Customs Enforcement.

2

of jurisdiction. The district court agreed that the findings and conclusions of the magistrate judge were correct, adopted those findings and conclusions, and dismissed Lee's petition. Lee timely appealed.

## DISCUSSION

We review the district court's dismissal for lack of subject matter jurisdiction de novo, using the same standard applied by that court. See Robinson v. TCI/US West Communications Inc., 117 F.3d 900, 904 (5th Cir. 1997). Because the INS instituted removal proceedings against Lee on April 24, 2000, we apply the permanent rules governing immigration proceedings to this case. See DeLeon-Holguin v. Ashcroft, 253 F.3d 811, 813 (5th Cir. 2001).

In his habeas petition, Lee urges that his prior conviction is not a CIMT[2] and contends that he did not file a petition for review of the BIA decision because this court would have lacked jurisdiction to entertain such a petition; based on this belief, and the recent Supreme Court case of INS v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271 (2001), Lee instead filed the instant petition for habeas corpus.

---

[2] This is the sole issue raised by Lee through his habeas petition. As will be discussed infra, we are unable to consider this claim through habeas. If, however, Lee had raised on habeas any other issue in addition to whether his crime is a CIMT, then, if the conviction were a CIMT, he would never have had available any judicial review (habeas or direct appeal) of his "other" claims, and St. Cyr would apply according to our authorities discussed infra.

In a case involving an inadmissible alien (see §
1182(a)(2)(A)(i))[3], this court held that "when the alien has been
convicted of a crime involving moral turpitude . . . 8 U.S.C. §
1252(a)(2)(C) deprives us of jurisdiction to hear his petition for
review." Balogun v. Ashcroft, 270 F.3d 274, 278-79 (5th Cir.
2001). Section 1252(a)(2)(C) provides:

> Notwithstanding any other provision of law, no court
> shall have jurisdiction to review any final order of
> removal against an alien who is removable by reason of
> having committed a criminal offense covered in section

---

[3]     1182(a)(2) provides, in relevant part:

(A) Conviction of certain crimes
     (i) In general
          Except as provided in clause (ii), any alien convicted of, or
          who admits having committed, or who admits committing acts
          which constitute the essential elements of —
                    (I) a crime involving moral turpitude (other than a
                    purely political offense) or an attempt or conspiracy to
                    commit such a crime, or
                    (II) a violation of (or a conspiracy or attempt to
                    violate) any law or regulation of a State, the United
                    States, or a foreign country relating to a controlled
                    substance (as defined in section 802 of Title 21), is
                    inadmissible.
     (ii) Exception
          Clause (i)(I) shall not apply to an alien who committed only
          one crime if
                    (I) the crime was committed when the alien was under 18
                    years of age, and the crime was committed (and the alien
                    released from any confinement to a prison or
                    correctional institution imposed for the crime) more
                    than 5 years before the date of application for a visa
                    or other documentation and the date of application for
                    admission to the United States, or
                    (II) the maximum penalty possible for the crime of which
                    the alien was convicted (or which the alien admits
                    having committed or of which the acts that the alien
                    admits having committed constituted the essential
                    elements) did not exceed imprisonment for one year and,
                    if the alien was convicted of such crime, the alien was
                    not sentenced to a term of imprisonment in excess of 6
                    months (regardless of the extent to which the sentence
                    was ultimately executed).

8 U.S.C. § 1182(a)(2)(A) (emphasis added).

4

> 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C). Lee has been ordered removed under § 1227(a)(2)(A)(i); his removal order therefore does not appear to fall within the jurisdiction-stripping provisions of § 1252(a)(2)(C). The provision relevant to Lee states:

(a)(2) Criminal Offenses
    (A) General crimes
        (i) Crimes of moral turpitude —
        Any alien who —
            (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
            (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
        is deportable.
        (ii) Multiple criminal convictions
        Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.
        (iii)Aggravated felony
        Any alien who is convicted of an aggravated felony at any time after admission is deportable.

8 U.S.C. § 1227(a)(2). In light of these provisions, Lee contends that § 1227(a)(2)(A)(i) is "subsumed" in § 1182(a)(2)(A)(i), and that under <u>Balogun</u> this court similarly lacks jurisdiction to hear a petition for review by an alien (such as Lee) ordered removed under § 1227(a)(2)(A)(i).

5

While logical at first blush, Lee's "subsumation theory" cannot survive more careful scrutiny. The INS ordered Lee removed pursuant to § 1227(a)(2)(A)(i). Although this provision does appear in the jurisdiction-stripping statute, § 1252(a)(2), it prohibits appeal only by aliens convicted of multiple CIMT, not aliens convicted of only one CIMT. Because the order removing Lee is not included in the jurisdiction-stripping statute, the unambiguous text of the statute permitted him to seek direct review of the determination in this court. As the district court pointed out, different standards apply to aliens seeking admission to the United States (who may be considered "inadmissible" under § 1182 for their prior conduct) and aliens lawfully admitted to the United States subject to deportation for subsequent conduct (under § 1227). Once an alien is lawfully admitted into this country, logic demands that it be harder to remove that lawfully admitted alien than to refuse admission to an alien seeking entry in the first instance. This notion is borne out in the structure of § 1252(a)(2)(C) (applicable to lawfully admitted aliens subject to deportation), which divests this court of jurisdiction more narrowly than § 1182(a)(2)(A)(i)(applicable to removable aliens never lawfully admitted into the United States). Accord St. Cyr, 533 U.S. at 298, 121 S. Ct. at 2278 (discussing the "strong presumption in favor of judicial review of administrative action"). To hold, as Lee urges, that § 1227(a)(2)(A)(i) is somehow "subsumed" into § 1182(a)(2)(A)(i), would harm the very subgroup of

6

aliens — those legally residing in the United States — to which Lee himself belongs.

Lee argues that our reading of the statute runs counter to the intent of Congress, which was "to deprive criminal aliens of direct judicial review under the INA." Appellant's Br. at 19. He points to no authority, either case law or legislative history, in support of his proposition. Moreover, our reading of the statute supports the view that Congress rationally chose to permit direct review for aliens lawfully admitted into the United States who commit a single CIMT within five years of admission, and to prohibit direct appeal only for those aliens convicted of multiple CIMT. This regime allows review and correction of a possible error for those convicted of a single offense, and dispenses with additional process for repeat offenders. We need not resort to hypothetical inquiries about Congressional intent here, however, because our resolution of the question is supported by the text and structure of the statute as well as our prior decisions; Lee's "subsumation theory" is not.

Lee further contends that Smalley v. Ashcroft, 354 F.3d 332 (5th Cir. 2003), requires reversing and remanding the case back to the district court for a hearing of his habeas petition. This argument proves too much. In Smalley, this court held that 8 U.S.C. § 1182(a)(2)(A)(i)(I) stripped this court of jurisdiction to hear a petition for review on direct appeal of a deportation order filed by an alien ordered deportable for committing a single CIMT.

7

354 F.3d at 335. The court first had to ascertain whether Smalley's conviction for money laundering qualified as a CIMT; after concluding that this offense constituted a CIMT, the court necessarily concluded that it lacked jurisdiction to hear a petition for review because of the jurisdiction-stripping provision in the transitional Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") rules.[4] 354 F.3d at 339. In determining whether the crime at issue was a CIMT, this court explained that it "always ha[s] jurisdiction to consider whether . . . specific conditions exist that bar . . . jurisdiction over the merits, namely, whether the petitioner is (1) an alien, (2) who is deportable, (3) for committing the type of crime that bars [this court's] review." Id. at 335 (quoting Nehme v. INS, 252 F.3d 415, 420 (5th Cir. 2001)). Moreover, Smalley provides the exact sort of review Lee seeks: If Lee had, like Smalley, filed a petition for review, this court could have considered the "jurisdictional fact" of his sole contention on appeal — that his crime was not a CIMT — even though an affirmative finding would deprive the court of jurisdiction. If Lee's contention prevailed, however, this court would have jurisdiction to hear his full petition and grant appropriate relief. Thus, assuming arguendo that Lee is correct on this point, the appropriate procedural option was to file a petition for review, not a petition for habeas corpus, because

---

[4]     The permanent rules are codified at § 1252(a)(2)(C).

8

binding circuit law holds that where another avenue of relief exists, habeas will not lie. <u>Santos v. Redno</u>, 228 F.3d 591, 597 (5th Cir. 2000). In failing to file a petition for review, Lee forfeited the opportunity for this determination.

In <u>St. Cyr</u>, the Supreme Court addressed the jurisdiction-stripping statute in a similar, although not directly controlling, context. St. Cyr challenged the effect of parts of the IIRIRA that eliminated the Attorney General's ability to refuse to deport aliens previously convicted of aggravated felonies. 533 U.S. at 297, 121 S. Ct. at 2277. St. Cyr filed a petition for habeas corpus to challenge the law's application to him; the INS asserted that the relevant parts of the IIRIRA repealed the federal courts' habeas jurisdiction. Initially, the INS had to overcome "both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." <u>Id.</u> at 298, 121 S. Ct. at 2278 (internal citations and footnotes omitted). If it were correct that Congress had repealed both habeas review and all other avenues of review, the Court reasoned, a serious constitutional Suspension Clause question would be presented. <u>Id.</u> at 305, 121 S. Ct. at 2282. Both parties agreed that no alternative forum existed (because Congress had removed federal court jurisdiction to hear a petition for review), so the Court had to determine if Congress spoke with sufficient clarity to repeal habeas jurisdiction. The Court answered the second inquiry in the

negative, held that habeas jurisdiction existed, and thereby avoided the Suspension Clause question.

A divided panel of the Third Circuit has held, following St. Cyr, that habeas corpus jurisdiction exists even where a petition for review could have been filed. In Chmakov v. Blackman, two illegal aliens filed a petition for habeas corpus, alleging violation of their due process rights because they received ineffective assistance of counsel. 266 F.3d 210, 213 (3d Cir. 2001). The Chmakovs were initially ordered removed, and an IJ denied their application for political asylum. Id. at 212. Through counsel, the Chmakovs filed an untimely brief with the BIA, which responded by dismissing their appeal. The Chmakovs failed to appeal to the Third Circuit, even though that court retained jurisdiction to hear a petition for review after passage of the IIRIRA. Id. The Chmakovs then filed a habeas petition in federal district court seeking relief for ineffective assistance of counsel. The court awarded summary judgment to the INS for lack of subject matter jurisdiction. In assessing the jurisdictional question, the Third Circuit, citing St. Cyr, announced the following test:

> [B]efore we could find that the District Court lacked jurisdiction to entertain the Chmakovs' habeas petition, we would have to be satisfied both that there was another avenue for review of the BIA's decision and that Congress had clearly stated its intention to strip district courts of power to hear petitions such as this.

10

266 F.3d at 214 (emphasis in original).  The Chmakovs plainly met the first part of the court's test: "it is acknowledged by both parties that the Chmakovs had the right to seek review in this Court of the BIA's decision to dismiss their claim for asylum and order them deported."  Id.  Moving to the second part of the test, the court determined that Congress had not expressed its desire to repeal habeas jurisdiction with sufficient clarity, relying on the Supreme Court's reasoning in St. Cyr (and previous circuit cases). Id.; accord Riley v. INS, 310 F.3d 1253, 1255 (10th Cir. 2002); Liu v. INS, 293 F.3d 36, 39-41 (2d Cir. 2002); contra Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) (dismissing habeas petition because alien failed to file a timely petition for review, and consideration of the petition would have not been futile because the court could have considered the jurisdictional fact contested by the alien).[5]

Judge Roth dissented from the majority's interpretation of St. Cyr.  In St. Cyr, reasoned Judge Roth, the Supreme Court "repeatedly suggests, in keeping with the Suspension Clause, that where the petitioner has available to him an alternate avenue of review, the writ of habeas corpus simply need not be available."

---

[5] The Second Circuit apparently has no similar rules limiting habeas jurisdiction to cases where no other avenue of relief is available.  Because we are bound by our precedent to the contrary, and St. Cyr did not overrule that precedent, we must come to a different conclusion.  Notably, the Ninth Circuit uses a procedure similar to this court's in assessing BIA characterizations of crime.  See Pazcoguin v. Radcliffe, 292 F.3d 1209, 1212 (9th Cir. 2002) ("We have repeatedly held that we retain jurisdiction to determine whether an alien in fact committed acts that would trigger [the jurisdictional bar].").

11

Chmakov, 266 F.3d at 217. Because the Chmakovs admittedly had an alternative avenue of review available to them (a petition for review in the court of appeals), but did not take it, habeas jurisdiction need not lie and was not available. "Thus, contrary to the majority's view, the principal argument offered by the INS in this case — that an explicit statement of intent to repeal habeas jurisdiction should only be required where the repeal might lead to a violation of the Suspension Clause — is consonant with the Supreme Court's decision in St. Cyr." Id. at 218. We agree. As in Chmakov, no suspension clause issue is created here because Lee could have, but did not, employ another avenue of relief, namely, a petition for review.

Treatment of this issue after St. Cyr by other circuits comports with this approach: If an alien is ordered removed, he should file a petition for review; if this court lacks jurisdiction to hear that petition for review, only then may he file a petition for habeas corpus. See Yanez-Garcia v. Ashcroft, 388 F.3d 280, 283-84 (7th Cir. 2004) (dismissing an alien's petition for review because the court lacked jurisdiction to hear it under IIRIRA, and remanding the case to the district court so alien could instead file a petition for habeas corpus); Laing, 370 F.3d at 999-1000 (dismissing habeas petition because alien could have filed a petition for review, and review by the Ninth Circuit would have not been futile because the court could have considered the jurisdictional fact contested by the alien); Lopez v. Heinauer, 332

12

F.3d 507, 511 (8th Cir. 2003) ("Although habeas jurisdiction remains available to deportees who raise questions of law and who have no other available judicial forum [citing St. Cyr.], the statute here provides an adequate judicial forum, permitting the noncriminal deportee to file a petition for review in the appropriate court of appeals. . . . Lopez filed the wrong action in the wrong federal court."); see also Foroglou v. Reno, 241 F.3d 111, 114 (1st Cir. 2001) (deciding, in a case decided just before St. Cyr, that "habeas is preserved for those who have no other way to present on direct review constitutional or other legal challenges to a final order of deportation") (emphasis in original).

Lee should have filed a petition for review in this court. Unlike in St. Cyr, where the court of appeals lacked all means of reviewing the legal question presented because of IIRIRA's jurisdiction-stripping provisions, this court had jurisdiction to resolve Lee's CIMT challenge through a petition of review. Because Lee failed to file a petition for review, the district court lacked jurisdiction to hear his habeas petition. See Santos, 228 F.3d at 597 (holding that habeas is unavailable where the court of appeals could have heard the claims presented through another avenue of relief); Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 305 (5th

Cir. 1999);[6] see also 8 U.S.C. § 1105a(c) ("No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents ground which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order . . . .").[7]

If Lee had doubts as to whether this court could have heard his petition for review, he should have protected his rights by filing one. Our review in such a case would be similar to the manner in which this court decides questions of qualified immunity on interlocutory appeal: if the court can determine as a matter of law whether immunity shields the official, jurisdiction is asserted and the question is resolved; if the court is unable to decide the question of immunity as a matter of law, the appeal is dismissed for lack of jurisdiction. Cf. Hernandez ex rel. Hernandez v. Tex.

---

[6] To the extent the issue is "open" because previous cases dealt only with the "transitional" rules as opposed to the permanent ones, there is little basis to hold otherwise vis-a-vis the permanent rules because the statutory scheme is basically identical. See Renteria-Gonzalez v. INS, 322 F.3d 804, 809 (5th Cir. 2002) ("The transitional and permanent rules are nearly identical.").

[7] This result is further supported by Rivera-Sanchez v. Reno, where we vacated a district court's dismissal of a habeas petition on the grounds that (1) the underlying offense was not included in the jurisdictional-stripping provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), (2) the petitioner's action for relief should have been through a motion for review of the BIA determination; and thus (3) the district court lacked jurisdiction to hear the habeas petition. 198 F.3d 545, 547-48 (5th Cir. 1999).

14

Dep't of Protective and Regulatory Servs., 380 F.3d 872, 878-79 (5th Cir. 2004); Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). Litigation would proceed in similar fashion in this court: the alien files a petition for review; if the court determines that the crime is not a CIMT, jurisdiction is asserted and the case is decided accordingly; if the court determines the crime is a CIMT, the petition is dismissed for lack of jurisdiction and the alien, lacking another avenue of relief, may proceed in habeas. This method reduces confusion as to procedure, efficiently uses judicial resources,[8] and best synthesizes the intent of Congress and controlling Supreme Court precedent.

To clarify, we do not hold that Congress repealed habeas jurisdiction when it passed IIRIRA;[9] instead, a petitioner must exhaust available avenues of relief and turn to habeas only when no other means of judicial review exists. When a petitioner challenges whether a crime constitutes a CIMT, this court has jurisdiction to determine our jurisdiction and thus decide whether the BIA correctly considered the crime a CIMT. As Lee failed to

---

[8]    The Seventh Circuit, although disagreeing with this practice, has credited this approach as economical, mainly because a petition for review, unlike a habeas petition, comes directly from the BIA to the court of appeals, bypassing the district court entirely. See Yanez-Garcia, 388 F.3d at 284.

[9]    To that extent, we agree with the circuits addressing this issue. See Chmakov, 266 F.3d at 214. However, the fact that habeas jurisdiction persists under the statute does not undermine our jurisprudence that habeas can lie only where no other avenue of relief exists; dismissal of petitions like Lee's does not constitute a holding that habeas jurisdiction has been stripped (see id.), but only that the petitioner has defaulted his opportunity to employ this jurisdiction and that the district court lacked jurisdiction to hear his particular case. Accord Laing, 370 F.3d at 997-99.

follow this procedure, which directly derives from this court's previous decisions, the district court properly dismissed his habeas petition. **AFFIRMED.**